# Lane *v.* May & Thomas Hardware Company.

### *Bill for Specific Performance.*

1. *Memorandum; when not evidence.*—If it does not appear that the pages of a memorandum book offered in evidence were entered at or about the time the payments were made or sufficiently near that the witness knew the entries to be correct, thy are properly excluded.

[Lane v. May & Thomas Hardware Co.]

2. *When the implication is a reasonable time intended.*—If a contract for building a house does not specify the time for completion the implication is a reasonable time.

3. *Payments; when do not indicate abrogation of contract.*—If a contractor to build a house furnishes his employer with a written statement showing the amount paid on the contract, the balance due, and the amount the contractor owes for labor and material on outstanding bill which might become a charge on the property; and this latter amount with the payments made is in excess of the money the employer agreed to pay on his contract; and he applies the balance of his indebtedness to the contractor to the payment of labor and material expended and used in completing the contract, these payments are essentially payments under the contract and not in abrogation of it.

4. *Specific performance; when enforced.*—If a contract to build a house is that the employer will convey to the contractor certain real property in part payment of the contract price, the contractor or his transferee is entitled in equity to have the contract specifically enforced when it has been fully executed on the part of the contractor.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. WILLIAM H. SIMPSON.

The May & Thomas Hardware Co. and others brought this bill for specific performance against Chas. P. Lane. It avers a contract between him and one Pool for building a house; that the contractor Pool had completed his contract and had assigned it to the complainants; that the contract in part was that Lane would convey certain lots of land to Pool as part payment of the contract price; and that he failed and refused to make the conveyances. Lane set up full payment of the contract price by payments made to Pool and to material men and laborers, and in addition that he had paid a large sum in excess of the contract price, having been forced so to pay by reason of Pool's failure to complete his contract. Decree was rendered for complainants on the question of facts presented after demurrers were overruled.

R. W. WALKER and WILLIAM RICHARDSON, for appellant, contended that Lane's testimony and memorandum were admissible, citing *Ackling v. Hickman,* 63

Ala. 494; *Jacques v. Houghton*, 76 Ala. 238. And that Lane did not breach the contract but paid more than the contract price after Pool had failed to comply with the contract citing, *Hewlett v. Alexander*, 87 Ala. 193; *Mobile B. & L. Ass'n v. Robertson*, 65 Ala. 382; *Mason v. Ala. Iron Co.*, 73 Ala. — ; *Comer v. Bankhead*, 70 Ala. 136; *Evington v. Smith*, 66 Ala. 398; *Badder v. Davis*, 88 Ala. 367; *Bell v. Teague*, 85 Ala. 211.

HUME, SCHEFFEY & SPEAKE, *contra*, contended, that Lane's memorandum was not admissible and that the payments alleged by him to have been made to material men were not proven in that manner and with that clearness as entitles the evidence to credence, citing the following authorities, *Kling v. Tunstall*, 109 Ala. 609; *L. & N. R. R. Co. v. Cassiby*, 109 Ala. 697; 1 Rice on Ev., p. 753; *Paige v. Francis*, 97 Ala. 379; *Herbert v. Allen*, 59 Ala. 283; 18 Wallace 516.

McCLELLAN, C. J.—It does not appear that the items on the pages of respondents' memorandum book which were offered in evidence were entered at or about the time the payments were made nor sufficiently that the witness knew the entries to be correct when they were made. The pages of the book thus offered were therefore properly excluded by the chancellor.—*Kling v. Tunstall*, 109 Ala. 609; *Louisville & Nashville Railroad Co. v. Cassibry*, 109 Ala. 697, and authorities there cited.

It was only by reference to these memoranda that it was attempted to prove the items of alleged payment in excess of that part of the contract price which was to be paid in money: the witness expressly relied upon them as his source of "information" upon which his testimony was given. And we therefore conclude that it was not made to satisfactorily appear in the case that the respondent has ever paid more than the twelve hundred and forty-five dollars stipulated for in the contract.

Upon the whole evidence we have no difficulty in reaching the conclusion that Pool built and completed the house within the time and in the manner required by the contract. No time for completion was specified

in the contract. The implication therefore is that the house was to be finished within a reasonable time. It was finished within four months from the date of the contract. This was clearly not more than a reasonable time. Besides it is not pretended that there was any unwarranted delay. It is insisted, however, that Pool did not complete the structure, but made default therein, and that it was carried on to completion by the respondent himself. The evidence does not support this contention. We gather from it that on September 23, 1893, the contractor, Pool, gave the respondent a written statement showing the amount the latter had paid on the contract, the balance due or which would be due from him and the amount the contractor owed for labor and material on outstanding bills. From this statement it appeared that the aggregate of amounts paid and owed by respondent together with outstanding bills, which the contractor owed, and which to the extent of any unpaid balance of the contract price might be charged on the property was greatly in excess of the money respondent agreed to pay. Upon this state of affairs thus coming to the attention of the respondent he declined to make further payment directly to the contractor, and from thence on to the completion of the house, which was within a few days thereafter, he applied the balance of his money indebtedness under the contract to the payment of labor and material expended and used in its completion. These payments though not made directly to the contractor, were essentially payments to him under the contract; and he continued to supervise and carry on the work under the contract to its completion to the satisfaction of the respondent. It is clear, we think, that the adoption of this mode of payment by respondent was not due to any dissatisfaction with, or default on the part of the contractor, but was due to a very natural desire on the part of the respondent to be assured that the money should go in satisfaction of claims which might if not paid become charges on the property. This change in the mode of payment was obviously not an abrogation of the contract. The contract was never abrogated; but, as the chancellor found, and as we find, was fully carried out

by Pool; and its complete and satisfactory execution was accepted and acknowledged by the respondent.

The contract to build the house being thus fully executed by Pool, and that part of the price which was to be paid in money having been paid, or nearly so, there remained to be done only the conveyance to Pool of the lot of land which the contract bound the respondent to convey to him upon the completion of the house. The contract for this conveyance having been duly assigned by Pool to the complainants they are entitled to have it specifically enforced in accordance with the prayer of their bill.

The demurrer to the bill is not insisted on by counsel; and we advert to it only to say that it was properly overruled.—*Davis v. Williams*, (MS.)

Affirmed.